### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | |
|---|---|
| **ROBIN L. BALKO,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| **v.** | )          **Docket No. 07-04-P-S** |
| | ) |
| **JOHN E. POTTER, Postmaster General,** | ) |
| **United States Postal Service,** | ) |
| | ) |
| **Defendant** | ) |

### RECOMMENDED DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The defendant, the Postmaster General of the United States Postal Service ("USPS),
moves for summary judgment on both counts of the complaint in this action alleging
discrimination on the basis of disability and retaliation. I recommend that the court grant the
motion in part.

## I.  Summary Judgment Standards

### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue
as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.
R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material'
means that a contested fact has the potential to change the outcome of the suit under the
governing law if the dispute over it is resolved favorably to the nonmovant. By like token,
'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve

the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

## B.  Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with

an appropriate record citation.  *See id*.  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id*.  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id*.

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(e). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id*.; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.") (citations and internal punctuation omitted).

## II.  Factual Background

The plaintiff was first employed by the United States Postal Service ("USPS") on July 10, 1984 as a temporary employee and converted to permanent status on August 4, 1984. Defendant's Statement of Undisputed Facts ("Defendant's SMF") (Docket No. 17) ¶ 1;

Plaintiff's Amended Opposing Statement of Material Facts ("Plaintiff's Responsive SMF") (Attachment 1 to Docket No. 25) ¶ 1.  At all times prior to July 2006 the plaintiff was assigned to the Portland Processing and Distribution Center in Portland or its Northwest Annex.  *Id*. ¶ 2.  In July 2006 all plant mail processing operations and clerk employees, including the plaintiff, moved to a newly constructed facility in Scarborough, Maine.  *Id*.  Shifts at the USPS are designated Tour 1, Tour 2, and Tour 3.  *Id*. ¶ 3.  An employee is considered to be working Tour 1 if her start time is any time from 8:00 p.m. to 3:59 a.m.  *Id*.  An employee is considered to be working Tour 2 if her start time is any time from 4:00 a.m. to 11:59 a.m.  *Id*.  An employee is considered to be working Tour 3 if her start time is any time from 12:00 p.m. to 7:59 p.m.  *Id*.

From the beginning of her employment until August 11, 2000 the plaintiff worked as a clerk on various bid assignments[1] on Tour 3.  *Id*. ¶ 4.  From about April 1994 to about July 1996 the plaintiff's work hours were from 3:30 p.m. until 12:00 a.m.  *Id*. ¶ 5.  From about July 1996 to about August 2000 the plaintiff's work hours were from 12:00 p.m. to 8:30 p.m.  *Id*. ¶ 6.  On or about February 4, 1997 the plaintiff injured her back while working at the USPS.  *Id*. ¶ 7.  From about August 12, 2000 to about October 27, 2001 the plaintiff worked on Tour 2, with work hours from 6:30 a.m. to 3:00 p.m.  *Id*. ¶ 8.  On or about October 26, 2001 the plaintiff's Tour 2 job was abolished and she was assigned to Tour 3 effective October 27, 2001.  *Id*. ¶ 9.

From about October 26, 2001 until about August 2003 the plaintiff worked on Tour 3, with work hours from 2:30 p.m. to 11:00 a.m.  *Id*. ¶ 10.  On or about January 29, 2003 the plaintiff claimed a work-related injury to her neck and shoulder.  *Id*. ¶ 12.  From about August 9, 2003 until about March 4, 2005 the plaintiff worked on Tour 3 with start times between 12:00

---

[1] When a bid assignment or bid job is available, the employee with the most seniority who bids on the job will be awarded the job.  Plaintiff's Amended Statement of Additional Material Facts ("Plaintiff's SMF") (included in Plaintiff's Responsive SMF beginning at 16) ¶ 44; Defendant's Reply to Plaintiff's Statement of Additional Material Facts ("Defendant's Responsive SMF") (Docket No. 28) ¶ 44.

p.m. and 2:45 p.m. and ending times between 8:30 p.m. and 11:15 p.m.  *Id.* ¶ 13.  On or about September 25, 2003 the plaintiff received a limited duty assignment to work from 2:45 p.m. until 11:15 p.m.  *Id.* ¶ 14.  A limited duty or modified assignment is a temporary work assignment created by the USPS to accommodate an injured employee who has medical restrictions.  *Id.* ¶ 15.  Employees with limited duty assignments still hold their regular bid jobs and are expected to return to them once their injuries resolve and the need for restrictions no longer exists.  *Id.*  On or about April 13, 2004 the plaintiff requested a transfer to a custodial position so that she could bid on a mechanic's position if one became available, as mechanics and custodians are in the same craft.  *Id.* ¶ 16.

On or about June 16, 2004 the plaintiff received a limited duty assignment to work Tour 1 from 6:00 p.m. to 2:30 a.m.  *Id.*  17.  On or about August 19, 2004 the plaintiff received a limited duty assignment to work from 7:30 p.m. to 4:00 a.m.  *Id.* ¶ 18.  On or about February 14, 2005 the plaintiff was awarded a bid job on Tour 2, working as a mail processing clerk on the Small Parcel Bundle Sorter ("SPBS").  *Id.* ¶ 19.  The award was contingent on the plaintiff's being able to fully assume the position within six months from the time at which the bid was submitted.  *Id.* ¶ 20.  Management reserved the right to request that the employee provide medical certification that she would be able to fully perform the duties of the bid position within six months of the bid.  *Id.*  If the employee failed to provide such certification, the bid would be disallowed.  *Id.*  Prior to having the job on the SPBS, the plaintiff worked in automation, which involved lifting the mail out of cages, taking it out of trays and putting it on a belt, grabbing the sorted bundles of mail and then traying the mail and placing the trays on racks.  Plaintiff's SMF ¶ 7; Defendant's Responsive SMF ¶ 7.  The plaintiff also worked on the flat sorter before her bid

job on the SPBS, a job that involved lifting trays that ranged between 15 and 35 pounds. *Id*. ¶ 8. The plaintiff injured her neck and shoulder in 2003 from lifting the trays. *Id*. ¶ 9.

On about February 17, 2005 Dr. Steven Johnson cleared the plaintiff to perform regular work as of March 5, 2005. Defendant's SMF ¶ 21; Plaintiff's Responsive SMF ¶ 21. From about March 5, 2005 until about May 12, 2006 the plaintiff worked on Tour 2 with hours from 7:00 a.m. to 3:30 p.m. *Id*. ¶ 22. On about April 18, 2005 the plaintiff claimed a new work-related injury to her hands. *Id*. ¶ 23. She started to experience problems with carpal tunnel syndrome from keying codes into the machines. Plaintiff's SMF ¶ 15; Defendant's Responsive SMF ¶ 15.

As of October 2005 Douglas Bailey was the acting lead Manager of Distribution Operations. Defendant's SMF ¶ 22 [sic]; Plaintiff's Responsive SMF ¶ 22. Before October 2005 Bailey had been working on a new staffing package for the new Scarborough plant that was to open in or about July 2006. *Id*. ¶ 24. He was responsible for reducing staffing by three hundred thousand hours, with forty thousand to come from manual operations. *Id*. He also had a goal to reduce overtime hours. *Id*. It is a goal of the USPS to process as much mail with automated machinery as possible. *Id*. ¶ 25. As mail sorting machines have improved, there has been less need for hand-sorting the mail and the USPS has reduced the number of manual sorting jobs. *Id*. ¶ 26. Mail that is processed manually and not by automation is processed in the "hand case." *Id*. ¶ 27. There was more mail to be sorted in the hand case on Tours 1 and 3 than on Tour 2. *Id*. ¶ 28.

According to the plaintiff: "Tour 3 is when it all happens. It's when the mail gets out, mail comes in. The primary mail comes in, you have to get it out for the day, for the night. It has to go. That's our business that we're in is getting that mail processed and getting it to our

customers.  So there's a lot of mail, a lot of physical heavy work on Tour 3."  *Id*. ¶ 29.  More employees are assigned to work in the hand case in the evening and night than during the day. *Id*. ¶ 30.

As of October 2005 the plaintiff was unable to do her bid job on the small bundle parcel sorter due to her injuries and was assigned to work exclusively in the hand case,[2] manually sorting mail during her Tour 2 work hours.  *Id*. ¶ 31.  She had never held a bid job in the hand case.  *Id*. ¶ 32.  Working in the hand case bothered the plaintiff's shoulder and neck, but she did not complain to management because she did not want to be sent home without a paycheck; instead, she tried to give herself breaks.  Plaintiff's SMF ¶ 11; Defendant's Responsive SMF ¶ 11.  As of October 2005 no postal employee held a bid job in the hand case on Tour 2. Defendant's SMF ¶ 34; Plaintiff's Responsive SMF ¶ 34.  John McGovern and Chris Caputo held the job of automation supervisor on Tour 2 when the plaintiff was working in the hand case. *Id*. ¶ 35.  As of October 2005 no supervisor was specifically assigned to the hand case on Tour 2. *Id*. ¶ 36.  McGovern and Caputo had to supervise both their automation areas and the hand case. *Id*.  There was a supervisor specifically assigned to the hand case for Tours 1 and 3.  *Id*. ¶ 37.  As of October 2005 a lot of overtime was being hired on Tours 1 and 3 for work in the hand case. *Id*. ¶ 41.

On or about October 22, 2005 the plaintiff was informed that her duty hours would be changed to a start time of 7:30 p.m.  *Id*. ¶ 43.  It was Bailey's decision to reassign the plaintiff off of Tour 2.  *Id*. ¶ 44.  On or about October 26, 2005 the plaintiff contacted the USPS agency EEO office in connection with a claim that she was being moved to a 7:30 p.m. starting time as a result of discrimination based on disability.  *Id*. ¶ 46.  The plaintiff had not filed any EEO

---

[2]  The purpose of the hand case is to sort mail that cannot be processed in automation.  Plaintiff's SMF ¶ 64; Defendant's Responsive SMF ¶ 64.

complaints prior to October 2005.  *Id*. ¶ 47.  At some subsequent time Bailey was informed that he was within his rights to change the plaintiff's hours.  *Id*. ¶ 49.

On or about April 29, 2006 McGovern informed the plaintiff that her duty hours would be changed to a start time of 9:30 p.m. pursuant to an Offer of Modified Assignment.  *Id*. ¶ 50.  The difference between the April 29, 2006 modified assignment and the October 22, 2005 modified assignment was that the work hours began at 9:30 p.m. instead of 7:30 p.m.  *Id*. ¶ 51.  As of April 29, 2006 the plaintiff could not work her Tour 2 SPBS bid assignment.  *Id*. ¶ 53.  Bailey did not say anything discriminatory to the plaintiff.  *Id*. ¶ 56.  He did not say anything to the plaintiff about the fact that she had previously filed an EEO complaint.  *Id*. ¶ 57.

On May 1, 2006 the plaintiff contacted the Agency EEO office in connection with a claim of discrimination in her employment.  *Id*. ¶ 58.  From about May 13, 2006 to about October 13, 2006 the plaintiff was reassigned to work Tour 1 hours from 9:30 p.m. to 6:00 a.m.  *Id*. ¶ 59.  During this time she sometimes volunteered to work overtime and come in at 7:30 p.m.  *Id*. ¶ 61.  Even though the plaintiff was working on Tour 1 on a limited-duty assignment she still owned her Tour 2 job and could return to it if she were able to perform its duties.  *Id*. ¶ 63.

The move to the Scarborough plant required the elimination of clerk jobs.  *Id*. ¶ 64.  The plaintiff was in a group of Tour 2 employee who were going to lose their Tour 2 jobs with the move to the Scarborough plant.  *Id*. ¶ 65.  On September 13, 2006 the plaintiff's Tour 2 job was abolished.  *Id*. ¶ 66.  The plaintiff was reassigned to Tour 1 at that time along with approximately 27 other Tour 2 employees.  *Id*.  As a result of discussions with the clerks' union, clerks were offered custodial positions because clerk jobs were going to be eliminated with the move to the new plant.  *Id*. 67.  The plaintiff was offered the option of switching to the custodial craft.  *Id*. ¶ 68.  In July 2007 the USPS moved into the new plant in Scarborough.  *Id*. ¶ 69.  After the

8

move, the plaintiff agreed to transfer to the custodial craft and was assigned Tour 2 hours. *Id.* ¶ 70. From about October 14, 2006 to the present the plaintiff's custodian work hours have been 6:30 a.m. to 3:00 p.m. *Id.* ¶ 72.

As of May 13, 2005 the plaintiff's Tour 2 hours were 7:00 a.m. to 3:30 p.m., her hourly wage rate was $21.76 and her gross basic salary was $45,269.00. *Id.* ¶ 81. As of October 1, 2005 the plaintiff's schedule was the same, her hourly wage rate was $22.11 and her gross basic salary was $45,997.00. *Id.* ¶ 82. As of April 29, 2006 the plaintiff's schedule was the same, her hourly wage rate was $22.68 and her gross basic salary was $47,184.00. *Id.* ¶ 83. As of May 13, 2006 the plaintiff's Tour 1 schedule was 9:30 p.m. to 6:00 a.m., her hourly wage rate was $22.68, her gross basic salary was $47,184.00 and she was entitled to a night differential rate of $1.58 per hour. *Id.* ¶ 84. As of October 14, 2006 the plaintiff's Tour 2 schedule was 6:30 a.m. to 3:00 p.m., her hourly rate was $22.16 and her gross basic salary was $46,086.00. *Id.* ¶ 85.

On or about December 13, 2006 Dr. Paul Carrier concluded after examining the plaintiff that she was "currently doing very well. She has had significant improvement in both her injuries. Her bilateral carpal tunnel syndrome with flexor tenosynovitis is doing well and is minimally symptomatic as long as she restricts her activity, and she is self managing very well. Likewise, her right cervical shoulder strains are dramatically improved, and she is doing minimal self treatment. Her current job suits her well because of the wide variety of chores and the ability for her to rotate job tasks." *Id.* ¶ 86.

### III. Discussion

The complaint alleges discrimination based on disability in violation of the federal Rehabilitation Act of 1973, 29 U.S.C. § 794, and retaliation for protected activity in violation of 42 U.S.C. § 2000e-3(a). Complaint, etc. (Docket No. 1) ¶¶ 10-34.

## A.  Rehabilitation Act Claim (Count I)

The Rehabilitation Act provides, in relevant part: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be . . . subjected to discrimination under any program or activity . . . conducted by . . . the United States Postal Service."  29 U.S.C. § 794(a).  "In any claim under the Rehabilitation Act, the plaintiff must first establish that []he has a disability covered by the Act."  *Tardie v. Rehabilitation Hosp. of Rhode Island*, 168 F.3d 538, 542 (1st Cir. 1999).  In order to establish a *prima facie* case of disability discrimination under the Rehabilitation Act, a plaintiff must prove as well that she nevertheless was able to perform the essential functions of her job, with or without reasonable accommodation, and that the employer took adverse action against her because of her disability.  *Wright v. CompUSA, Inc.*, 352 F.3d 472, 475 (1st Cir. 2003).[3]  The defendant first argues that the plaintiff is not disabled for purposes of a Rehabilitation Act claim.  Defendant's Motion for Summary Judgment, etc. ("Motion") (Docket No. 16) at 4-8.

Under the Act, an "individual with a disability" is one who has a physical or mental impairment that substantially limits one or more of that individual's major life activities, has a record of such impairment or is regarded as having such an impairment.  29 U.S.C. § 705(20)(B). The defendant contends that the plaintiff's neck, shoulder and carpal tunnel syndrome impairments did not cause her enough difficulty to be considered substantially limiting at the relevant time.[4]  Motion at 6-7.   The plaintiff responds that she is substantially limited in the major life activities of sleeping, lifting and working.  Opposition at 1.

---

[3] *Wright* involved a claim under the Americans with Disabilities Act ("ADA"), 352 F.3d at 475, but the same legal standard is applicable to claims under the Rehabilitation Act, *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 23 n.2 (1st Cir. 2001).

[4] The parties refer to the plaintiff's impairments in the present tense throughout their written submissions, but the gravamen of the plaintiff's complaint is her assignment to work on Tour 1 from May 13, 2006 until October 14, 2006.  Complaint ¶¶ 18-23, 29-32; Defendant's SMF ¶ 72; Plaintiff's Responsive SMF ¶ 72; Plaintiff's Opposition

The phrases "substantially limits" and "major life activities" must be strictly interpreted to create a demanding standard for qualifying as disabled. *Rolland v. Potter*, 492 F.3d 45, 47 (1st Cir. 2007) (citing *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002)). To qualify as a disabled person under the Rehabilitation Act, a plaintiff must have a permanent or long-term impairment that prevents or severely restricts her from doing activities that are of central importance to most people's daily lives. *Id*. at 47-48. This court has recognized sleeping, lifting and working as major life activities, while noting that the Supreme Court in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471,492 (1999), said that working is to be considered a major life activity only when the plaintiff is not substantially limited with respect to any other major life activity, *Harding v. Cianbro Corp*., 436 F.Supp.2d 153, 172-73 (D. Me. 2006).

The inability to lift heavy objects, without more, does not amount to a substantial limitation on lifting. *Id*. at 176. On this issue, the plaintiff relies on Dr. Carrier's lifting restriction of intermittent lifting of up to ten pounds for four to six hours a day. Opposition at 6. That restriction is set forth at paragraph 39 of the plaintiff's statement of material facts, to which the defendant has objected on the grounds that it is not relevant to the question whether the plaintiff suffered from a disability at the time her shift was changed. Plaintiff's SMF ¶ 39; Defendant's Responsive SMF ¶ 39. The authority cited by the plaintiff in support of this paragraph, Dr. Carrier's deposition, Plaintiff's SMF ¶ 39, only makes clear that the restriction was in effect in December 2006, two months after the end of the relevant period of time, Deposition of John Paul Carrier, M.D. (Exh. 3 to Plaintiff's Responsive SMF) at 44, but not when it was first imposed. In any event, the paragraph of the statement of material facts itself is stated in the present tense, Plaintiff's SMF ¶ 39, and for that reason the defendant's objection is

---

to Defendant's Motion for Summary Judgment ("Opposition") (Docket No. 19 at 7-20. It is only the plaintiff's physical status during the five-month period when she was assigned to Tour 1 that appears to be relevant.

well taken and the paragraph will not be considered. The plaintiff offers no other evidence concerning any restriction on her ability to lift at the relevant time and I accordingly will not consider it further as the basis for a claim of disability.

With respect to the major life activity of sleeping, the plaintiff asserts that when she "has a flare-up of either her neck/shoulder injury or her carpal tunnel syndrome (CTS), it will affect her ability to sleep." Opposition at 2. The defendant again points out that the plaintiff has not presented medical evidence of a sleep disorder at the relevant time. Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Reply") (Docket No. 27) at 2. That observation is not completely accurate.

The plaintiff supports her position on the major life activity of sleeping with references to her June 14, 2006 affidavit supporting her EEO complaint and her husband's testimony. Opposition at 2. I assume that these are references to paragraphs 22, 23 and 31 of the plaintiff's statement of material facts; she does not cite her statement of material facts at any time in her memorandum of law. The affidavit to which she refers, presumably Exhibit 1 to her statement of material facts, is within the relevant time period, but it is cited only in support of paragraph 22. Paragraphs 23 and 31 refer to a different affidavit, Exhibit 7 to the statement of material facts. Plaintiff's SMF ¶¶ 22-23. That affidavit refers only to the plaintiff's sleeping difficulties in the present and is dated December 6, 2007. Declaration of Robin L. Balko (Exh. 7 to Plaintiff's Responsive SMF) ¶ 3 and at 2 (date). The entire reference to sleep in paragraph 23 is that the plaintiff "tosses and turns, is unable to sleep throughout the night undisturbed, is awakened by pain and/or numbness in her arms and hands, cannot get comfortable, and hardly ever gets sleep." Plaintiff's SMF ¶ 23. Assuming that the use of the present tense in paragraph 23 does not refer to the time the statement of material facts was put together but rather to the period when

the affidavit was signed and results from an unduly close copying from the affidavit, this evidence is timely.

The citations to Jason Balko's deposition testimony given in support of paragraphs 23 and 31 of the plaintiff's statement of material facts establish that he acknowledged that the plaintiff "is not sleeping well now" and that this had been the case for what "seems like years. I can't remember the last time it was just a peaceful night sleep, so I don't know." Deposition of Jason T. Balko (Exh. 2 to Plaintiff's Responsive SMF) at 25.

The defendant contends that this evidence of a sleep disorder is, at best, evidence of an episodic impairment, which is not enough to establish disability for purposes of the Rehabilitation Act. Reply at 2-3. The case law cited by the plaintiff, Opposition at 2, either deals with continuous sleeping difficulties, *see Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1060 (9th Cir. 2005); *Schopmeyer v. Plainfield Juvenile Correctional Facility*, 2002 WL 31255466 (S.D.Ind. Sept. 17, 2002), at *5; *Bennett v. Unisys Corp*., 2000 WL 33126583 (E.D.Pa. Dec. 11, 2000), at *6; *Presta v. Southeastern Pa. Transp. Auth.*, 1998 WL 310735 (E.D.Pa. June 11, 1998), at *7, or does not specify the nature of the sleeping difficulties, *see Reed v. Lepage Bakeries, Inc.*, 2000 WL 761626 (D. Me. Feb. 29, 2000), at *4. With one exception, the case law cited by the defendant actually does not deal with episodic difficulty in sleeping, as the defendant suggests, but rather holds that a plaintiff has not shown a substantial impairment of sleep that is worse than the quality of sleep of the general population when the plaintiff submits evidence that she can only get two to four hours of sleep a night, *Boerst v. General Mills Operations, Inc.*, 25 Fed.Appx. 403, 407 (6th Cir. 2002); or when she submits evidence that she takes a medication as a sleep aid and "usually get[s] a tough night's sleep[,]" *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 644 (2d Cir. 1998); or when she submits

13

only a conclusory affidavit, asserting that her impairment has caused "loss of sleep[,]" *Stein v. Ashcroft*, 284 F.3d 721, 726 (7th Cir. 2002).  The one cited case that does refer to episodic difficulty in sleeping, *Pouliot v. Town of Fairfield*, 226 F.Supp.2d 233, 243 (D. Me.  2002), involved widely separated episodes ("some months" in 1984, 1996, 1998 and 1999) and a lack of specific evidence about any sleep difficulties at the time the alleged discrimination took place. In the instant case, Jason Balko's testimony would allow a reasonable factfinder to conclude that the plaintiff was "not sleeping well" at the relevant time and the plaintiff's earlier affidavit would allow that factfinder to conclude that at the relevant time she was not sleeping through the night. While the question is a close one, I conclude that the plaintiff has provided sufficient evidence of a substantial impairment in her ability to sleep at the relevant time.

The conclusion that the plaintiff has shown evidence of a substantial limitation on her ability to engage in the major life activity of sleeping means that the major life activity of working may not be considered.  *Harding*, 436 F.Supp.2d at 172-73.  However, I will consider it here so that my recommendation will be before the court should it disagree with my recommendation on the issue of the plaintiff's claimed sleep disorder.   In that regard, the plaintiff relies primarily on her current physical limitations.  Opposition at 3-6.  With respect to the relevant period of time, she mentions that she was unable to perform the physical requirements of her bid job and experienced "problems with her neck and back when working in the hand case."  *Id*. at 3-4.  The defendant does not respond to this argument at all, Reply at 1-3, nor is working mentioned in the defendant's initial memorandum of law.  While I doubt that the timely evidence cited by the plaintiff is sufficient to demonstrate an inability to perform a wide range of jobs, which is the appropriate test for an alleged substantial limitation on working, *Guzmán-Rosario v. United Parcel Serv., Inc.*, 397 F.3d 6, 10-11 (1st Cir. 2005), the defendant

14

cannot be entitled to summary judgment on a basis which he never mentions in his written submissions to the court.

The defendant's next argument is that the plaintiff suffered no adverse action when her shift was changed. Motion at 8-11.  An adverse employment action is one that "involves a discrete change in the terms and conditions of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *de Jesús v. Potter*, 211 Fed. Appx. 5, 9 (1st Cir. Dec. 27, 2006) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)) (internal quotation marks omitted). Typically, the employer "must either . . . take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities" or "withhold from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service." *Blackie v. Maine*, 75 F.3d 716, 725 (1st Cir. 1996); *see also Berry v. City of South Portland*, 525 F.Supp.2d 214, 228 (D. Me. 2007).  Whether a particular job reassignment is materially adverse depends on the circumstances of the particular case and should be judged from the perspective of a reasonable person in the plaintiff's position. *Billings v. Town of Grafton*, __ F.3d __, 2008 WL 324902 (1st Cir. Feb. 7, 2008), at *13 (quoting *Burlington N. & Santa Fe Ry.*, 548 U.S. 53, __, 126 S.Ct. 2405, 2417 (2006), in the context of a retaliation claim).  A loss of prestige as a result of the transfer can demonstrate that it was materially adverse, if that loss is demonstrated by objective measures like reporting to a lower-ranked supervisor, having less contact with the public and requiring less experience and fewer qualifications. *Billings*, 2008 WL 324902 at *14.  Magistrate Judge Kravchuk of this court has suggested, without deciding, that "adverse work hour changes" may constitute a materially

adverse employment action.  *Pastula v. Lane Constr. Corp*., 2006 WL 2925239 (D. Me. Oct. 11, 2006), at *12.  The case law cited by the parties on this point provides little guidance.[5]

The plaintiff says that the transfer to Tour 1 was adverse because any USPS employee has to work shifts other than the day shift for a number of years before he or she can obtain day-time working hours; every employee who is not on Tour 2 will bid for a job on Tour 2 when it opens; the plaintiff had been able to obtain a job on Tour 2; the USPS Employee Labor Relations Manual established that the plaintiff was not supposed to be moved off Tour 2 even for a limited duty job "except under very limited circumstances[;]" she should have been moved to Tour 3 "which was closer in time to her bid hours[;]" and, when her bid job was eliminated, she was working Tour 1 hours, which meant that she became an unassigned regular on Tour 1 "with little to no chance in getting back on Tour 2."  Opposition at 7-8.[6]  The paragraphs of the plaintiff's statement of material facts on which these assertions appear to be based are numbers 6, 44-47, 83-84.  I found no paragraphs in the plaintiff's statement of material facts that support the assertions that the plaintiff should have been moved to Tour 3; and the plaintiff has little to no chance of getting back on Tour 2.  The facts asserted in the plaintiff's statement of material facts are that when an employee has partially overcome an injury or disability, if adequate work is not available at the facility within the employee's regular hours of duty, work outside the employee's

---

[5] The two possible exceptions are *Khan v. Cook County*, 1996 WL 432410 (N.D.Ill. July 30, 1996), cited by the plaintiff, Opposition at 7, and *Thomas v. Potter*, 202 Fed.Appx. 118 (7th Cir. 2006), cited by the defendant, Motion at 8-9.  In *Khan*, the court observed that "[t]ransfer to the night shift can be more than a minor change in working conditions."  1996 WL 432410 at *2.  In *Thomas*, the Seventh Circuit held in a brief unpublished opinion that a change in work schedule did not constitute an adverse employment action in the absence of evidence that the employer in making the change "knew about and sought to exploit" the plaintiff's "unique vulnerability," specifically that the plaintiff would consider the change undesirable or inconvenient.  202 Fed.Appx. at 119.  I do not find this gloss on the definition of an adverse employment action to be appropriate but note that, if it were, there is evidence in the summary judgment record that the defendant in this case was or should have been aware that the plaintiff considered the change from Tour 2 to Tour 1 to be undesirable.
[6] The plaintiff also contends that moving her from Tour 2 to Tour 1 "sent a message to USPS employees – a message of punishment[;]" treated her "less favorably than employees with junior seniority[;]" and that "[t]his message was obvious and powerful."  Opposition at 8.  The defendant's objections to the paragraphs in the plaintiff's statement of material facts that support these assertions, Defendant's Responsive SMF ¶¶ 91-93, are well taken and those paragraphs are stricken.

regular schedule may be assigned as limited duty but all reasonable efforts must be made to keep the hours of limited duty as close as possible to the employee's regular schedule, *id*. ¶ 84. I see nothing to support the second assertion in the plaintiff's statement of material facts. With these modifications, and given the facts that the plaintiff was working on Tour 2 when she was injured and that most employees prefer Tour 2, I conclude that, while it is again a close question, the plaintiff has submitted evidence that would allow a reasonable factfinder to conclude that her transfer to Tour 1 was an adverse employment action, even though it resulted in higher pay.

The defendant next contends, Motion at 10-11, that there is no evidence that the plaintiff was treated differently from nondisabled employees, which is another way to state the final element of the Rehabilitation Act test -- that the employer took the adverse employment action because of the plaintiff's disability. *Jacques*, 96 F.3d at 511. He asserts that the plaintiff had only one coworker who worked the same assignment on Tour 2 and that both were assigned to Tour 1 at the same time "because of the needs of the [USPS]," and notes that the plaintiff was moved from the day to the evening shift in 2001 with one day's notice. Motion at 10-11. The plaintiff responds that "[b]ecause Defendant segregated disabled individuals, there simply are no non-disabled employees in the hand case to which to compare them." Opposition at 9. Perhaps recognizing that this assertion does not serve to meet her evidentiary obligation, the plaintiff goes on to argue that she should be compared to "the non-disabled workers who also have bid jobs on Tour 2[,]" who she contends "cannot be moved off Tour 2 without clearly violating the collective bargaining agreement." *Id*. at 9-10. This argument is similarly unhelpful to the plaintiff, because it simply presents an interpretation of the collective bargaining agreement in effect at the USPS. It does not demonstrate that the defendant in fact treated similarly situated employees differently. She asserts in conclusory fashion that "[m]oving [her] off Tour 2 when

17

she had a bid job on that Tour treated her in a manner different from other employees who held bid jobs on Tour 2[,]" *id*., but she offers no evidence that any non-disabled employee was not moved to Tour 1 when that employee's circumstances were otherwise equal to those of the plaintiff at the relevant time.  A possible violation of the collective bargaining agreement does not and cannot serve to prove that the defendant moved the plaintiff to Tour 1 due to her disability.  Admittedly, the plaintiff has attempted to show that there was work available within her craft on Tour 2 that she could have done at the time she was moved to Tour 1, factual assertions that are disputed by the defendant, Plaintiff's SMF ¶¶ 56-57, 66, 68-77, Defendant's Responsive SMF ¶¶ 56-57, 66, 68-77, but those assertions, even interpreted as expansively as they must be in the plaintiff's favor, do not establish that nondisabled individuals doing the same or similar work on Tour 2 were not transferred to Tour 1, or would not have been, when the circumstances were otherwise the same.[7]  Therefore, the defendant is entitled to summary judgment on Count I.  *See Dudley v. Augusta Sch. Dep't*, 23 F.Supp.2d 85, 94 (D. Me. 1998).

This lack of evidence on the final element of the plaintiff's *prima facie* case makes it unnecessary to consider the defendant's further contentions that the USPS had a legitimate non-discriminatory reason or reasons for changing the plaintiff's shift and that there is no evidence that the reasons were a pretext for discrimination based on disability.  Motion at 11-13.

### B.  Retaliation (Count II)

The plaintiff does not contend that she has offered direct evidence of actionable retaliation for her filing of a discrimination complaint ("EEO complaint") with the USPS on October 26, 2005. The elements that she must therefore establish to demonstrate the existence of

---

[7] The defendant states that "[t]he only support Plaintiff presents for her assertion that there are other similarly situated employees that were treated differently is Doug Bailey's EEO Affidavit, Defendant's Exh. 20."  Reply at 5. This document is not cited in the plaintiff's memorandum.  Opposition at 9-11.  This is an apparent reference to paragraph 104 of the plaintiff's statement of material facts.  I read that paragraph to be directed to the plaintiff's retaliation claim and accordingly do not consider it here.

a *prima facie* case are the following: (i) she engaged in conduct that is protected under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3(a); (ii) she suffered an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action. *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir. 1996).  Once the *prima facie* showing has been made, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment decision, and, if the employer does so, the plaintiff must show that the proffered reason is in fact a pretext and that the employment action was the result of the defendant's retaliatory animus.  *Id.*

In this case, the defendant apparently admits that the filing of an EEO complaint with the USPS was protected conduct.  He proceeds directly to the second element of the *prima facie* case, arguing that the reassignment of the plaintiff to Tour 1 in late April 2006 was not a materially adverse employment action because it could not have "dissuaded a reasonable worker from making or supporting a charge of discrimination."  Motion at 13-14 (quoting *Burlington Northern*, 126 S.Ct. at 2409).  Essentially, both parties rest on their arguments with respect to the existence of an adverse employment action in connection with Count I of the complaint.  Motion at 14; Opposition at 16.  For the reasons already stated, I cannot rule out the possibility that the change in shift was an adverse employment action under the circumstances of this case.

The defendant next contends that the shift change was not causally related to the filing of the EEO complaint, because the defendant "sought to change Plaintiff's shift **before** she had engaged in any EEO activity."  Motion at 15 (emphasis in original).  He correctly states that an employer need not suspend a planned transfer simply because the employee to be transferred files a complaint upon being notified of the transfer.  *Id.*; *see Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001).  This argument rests on paragraphs 42, 45, and 48-50 of the

19

defendant's statement of material facts, the most critical of which for purposes of this contention is paragraph 48, which reads as follows:

> Ms. Balko's and Mr. Madison's hours were not changed in October 2005 because Mr. Bailey told Union officials he would hold off until he had further conversations with the union and with injury compensation personnel to make sure that he was within his rights to change their hours.

Defendant's SMF ¶ 48.  The plaintiff denies this paragraph, asserting:

> Ms. Balko and Mr. Madison's hours were not changed in 10/05 because Mr. Riley was involved and Mr. Bailey did not want the hassle of dealing with a complaint.

Plaintiff's Responsive SMF ¶ 48.  From these differing presentations, the defendant argues that he had made the decision before the plaintiff filed the EEO complaint in October 2005 and the plaintiff argues that he made a new decision to change the plaintiff's shift in April 2006.  The two versions of paragraph 48 are not necessarily contradictory, of course, but the inference which the plaintiff draws - "Mr. Bailey backed down and canceled the move[,]" Opposition at 17 - is not unreasonable.

The plaintiff's position is bolstered somewhat by the fact that the starting time for the new position was to be 7:30 p.m. when Bailey informed the plaintiff of the change in October 2005 and 9:30 p.m. when the change was actually made in April 2006.  Defendant's SMF ¶¶ 43, 50; Plaintiff's Responsive SMF ¶¶ 43, 50.  The plaintiff's position is weakened by the fact that seven months passed between the filing of the complaint and the change in shift.  *See, e.g., Mesnick v. General Elec. Co.*, 950 F.2d 816, 828 (1st Cir. 1991).  However, that expanse of time could also raise questions about the defendant's contention that Bailey was merely "consulting" with union and workers' compensation personnel to make sure that the planned change was

20

within his prerogative.[8] The defendant is not entitled to summary judgment on the basis of his argument that the plaintiff cannot establish a *prima facie* case of retaliation.

The defendant next contends that he is entitled to summary judgment because he has shown that the USPS had a legitimate, non-discriminatory reason for changing the plaintiff's shift: Bailey wanted to reassign the plaintiff to the later start time because "there was inadequate supervision in the hand case on Tour 2 and [Balko and the plaintiff] were not doing productive work for the Postal Service on Tour 2." Motion at 11. The plaintiff challenges, Opposition at 11-15, the factual assertions offered by the defendant in support of this argument, Motion at 11-12. The defendant points out that no postal employee held a bid job in the hand case on Tour 2, the limited-duty job the plaintiff was working before he was assigned to Tour 1; the USPS seeks to process as much mail as possible using automated machinery; the largest volume of mail arrived at the Portland processing plant after 7 p.m. and needed to be processed and dispatched by 6:30 a.m.; there was more mail in the hand case to be sorted on Tours 1 and 3 at the relevant time than there was during Tour 2; a lot of overtime was being used on Tours 1 and 3 for work in the hand case at the relevant time; mail that could have gone through the machines on Tour 2 was instead being brought to the hand case;[9] and Bailey was responsible for reducing staffing by

---

[8] The plaintiff offers as further evidence of a connection between her October 2005 complaint and the April 2006 change in shift that "retaliating against employees for taking EEO action apparently had happened in the past. According to Defendant's records, David Madison first contacted the EEO office on 10/26/05 regarding his concern that he was being inappropriately denied overtime. Three days later he was notified that he was being moved off Tour 2. The temporal proximity cannot be denied." Opposition at 18. This assertion is apparently based on paragraph 105 of the plaintiff's statement of material facts, which in turn is based on paragraph 6 of David Madison's affidavit. Plaintiff's SMF ¶ 105. However, as noted in the companion recommended decision filed today in Madison's virtually identical lawsuit, that assertion is contradicted by Madison's admission that he was informed on October 22, 2005 that his duty hours would be changed to a start time of 7:30 p.m. and that he initiated the EEO process, including a claim that he was improperly passed over for overtime hours, on October 26, 2005, exactly the opposite temporal relationship of that presented in the quoted statement in the plaintiff's memorandum of law. Under the circumstances, I decline to credit the this plaintiff's factual assertion. In addition, even if events had occurred in the sequence presented in Madison's affidavit, the fact remains that no change in hours actually occurred until April 2006.

[9] The plaintiff purports to deny the paragraph of the defendant's statement of material facts that supports this factual assertion. Defendant's SMF ¶ 42; Plaintiff's Responsive SMF ¶ 42. However, critical aspects of the denial are

three hundred thousand hours, including forty thousand hours from manual operations and a reduction of overtime.  Motion at 11-13.

The plaintiff responds, without further disputing the defendant's factual assertions just listed, by asserting that, while no supervisor was assigned responsibility for the hand case on Tour 2, unlike Tours 1 and 3, there was a supervisor "assigned to the floor on which [the plaintiff] worked" who could walk down to the hand case to check on the work being done, that if the supervisor had the time to assign "make-work" to the hand case he had time to supervise the plaintiff, there are more employees in the hand case on Tours 1 and 3 than there are during Tour 2, there frequently is no hand case supervisor at work on Tour 3, other employees often worked in the hand case on Tour 2, after the plaintiff was moved to Tour 1 she was sorting the same mail she would have sorted on Tour 2 and certain mail goes from the machines to the hand case at all times of day.  Opposition at 11-15. The argument that a supervisor who had time to assign "make-work" to the hand case must therefore have had time to supervise the plaintiff as she spent a full day working there assumes facts not in evidence – primarily that the two functions would take the same amount of time each day – and I will therefore not consider it further.  The assertion that there frequently is no hand case supervisor at work on Tour 3 is based on paragraph 55 of the plaintiff's statement of material facts, to which the defendant has made the valid objection that, lacking a time frame, the assertion is irrelevant.  Defendant's Responsive SMF ¶ 55.  I will disregard that assertion as well.  The remaining factual assertions are not necessarily inconsistent with the reasons given by the defendant for moving the defendant to Tour 1.  Still, viewing these assertions as the court must in connection with a motion for

---

phrased in the present tense, and some of the record documents cited deal only with the present time, while the relevant time is the time in April 2006 when the plaintiff was transferred to Tour 1.  None of the authority cited by the plaintiff concerns the manner in which the mail got to the hand case at the relevant time, whether some of it could have been sorted by machine  or whether it would have been more efficient to have that mail sorted on a tour other than Tour 2.

summary judgment, it would not necessarily be unreasonable for a juror to conclude that the defendant's proffered reasons are pretextual. That conclusion does not end the matter, however. The reasons given by the employer must be shown to be a pretext *and* the plaintiff must show that the challenged job action was in fact the result of discriminatory animus. *Fennell*, 83 F.3d at 535.

Here, the defendant mentions this final element of the legal standard but does not address it, choosing apparently to rely on his argument that the expressed "legitimate non-retaliatory reasons, all related to enhancing productivity and efficiency" as sufficient. Motion at 17-18. Again, while the evidence is certainly not strong on this point, the plaintiff has offered enough evidence to allow a reasonable factfinder to conclude that the real motive for the shift change was retaliation for the filing of a complaint based on disability rather than the non-discriminatory reasons put forward by the defendant.

### IV.  Conclusion

For the foregoing reasons, I recommend that the defendant's motion for summary judgment be **GRANTED** as to Count I (discrimination) and **DENIED** as to Count II (retaliation).


### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 25th day of February, 2008.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge